UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DUANE WILLIAM JONES,

       Plaintiff,

v.                                              Case No. 1:10-cv-840
                                              Hon. Robert J. Jonker

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

       Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for disability insurance benefits (DIB) and Supplemental Security Income (SSI).

       Plaintiff was born on July 28, 1957 (AR 44).[1] He completed the 11th grade (AR 44). Plaintiff alleged a disability onset date of September 9, 2006 (AR 125). He had previous employment as a truck driver (AR 131). Plaintiff identified his disabling conditions as: back injury; neck injury; knee injury; septal growth; and elbow problems (tennis elbow) (AR 130). On September 25, 2009, an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying benefits (AR 28-37). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

---

[1] Citations to the administrative record will be referenced as (AR "page #").

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d

918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases. *See Bailey v. Secretary of Health and Human Servs.*, No. 90-3265, 1991 WL 310 at * 3 (6th Cir. Jan. 3, 1991). "The proper inquiry in an application for SSI benefits

is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step. At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of September 9, 2006 and met the insured status requirements of the Social Security Act through December 31, 2011 (AR 30). At step two, the ALJ found that plaintiff suffered from severe impairments as follows: carpal tunnel syndrome; degenerative disc disease; fibromyalgia; chronic obstructive pulmonary disease (COPD); depression; and status post left knee replacement (AR 30). At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1, specifically Listing 12.04 (AR 32-33).

The ALJ decided at the fourth step that plaintiff had the residual functional capacity (RFC):

> . . . to lift or carry a maximum of 20 pounds occasionally and 10 pounds frequently. In an eight-hour workday, the claimant can stand or walk for six hours and sit for six hours. She [sic] should never use ladders, scaffolds or ropes. The claimant should only occasionally use ramps or stairs, stoop, crouch, kneel or crawl. He should avoid walking on uneven surfaces. The claimant should avoid concentrated exposure to vibrations. He should avoid exposure to hazards. The claimant can only do simple unskilled work with a specific vocational preparation (SVP) of 1 or 2; work involving 1, 2 or 3 step instructions; jobs that do not require him to compute / calculate, problem solve or reason; and jobs allowing an absence, tardy or leaving early once per month. The claimant can do no jobs involving concentration on detailed / precision tasks or multiple / simultaneous tasks. The claimant can only do work that has minimal personal contact or discussion with co-workers; work requiring brief and superficial contact with the general public; and jobs without production quotas mandating a specific number of pieces per hour or with a down line co-worker depending on the claimant's productivity.

(AR 33). The ALJ further found that plaintiff could not perform any of his past relevant work (AR 35).

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled, light jobs in the national economy (AR 36-37). Specifically, plaintiff could perform 28,000 jobs in the regional economy (defined as the state of Michigan) such as cleaner (8,000 jobs); packager (10,000 jobs); and bench assembler (10,000 jobs) (AR 36-37). Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from September 9, 2006 through the date of the decision (September 25, 2009) (AR 37).

At some point after the denial of plaintiff's claim, he re-filed for, and was awarded benefits. Plaintiff's counsel has presented a copy of a Notice of Award of benefits, in which the Social Security Administration found that plaintiff was disabled on September 26, 2009, one day after the ALJ denied the benefits in the present case. *See* Notice of Award (docket no. 17-1).

### III. ANALYSIS

Plaintiff raised four issues on appeal.

**A.     The ALJ committed reversible error by not properly considering the opinion of plaintiff's treating physician.**

Plaintiff's argument consists of the following:

> In this case, three separate physicians filed RFC forms which indicated Plaintiff could not be employed. In fact, the ALJ specifically admitted that fact in his Opinion (34)! At least two of those physicians were treating doctors, if not all of them, and their RFC forms and conclusions were supported by ample medical evidence.

Plaintiff's Brief at 18. Plaintiff does not identify the treating physicians, other than by citing page 7 of the ALJ's decision (AR 34). On this page, the ALJ discussed opinions given by Ronald L. Steury, D.O., Amarish Potnis, M.D., and Carol Vanderharst, M.D. as follows:

5

> As for the opinion evidence, in February 2006 and May 2007 Dr. Steury opined the claimant was not able to work as a truck driver (Exhibits 9F and 18F). This opinion is explained by Dr. Steury's reports and consistent with the record as a whole. Therefore, the undersigned adopts this opinion and gives it controlling weight.
>
> In June 2008 Dr. Steury opined the claimant was completely disabled from gainful employment (Exhibit 17F). In March 2009 Dr. Potnis opined the claimant was not able to work (Exhibit 31F). In June 2009, Dr. Vanderharst gave the claimant preclusive limitations (Exhibit 36F). These opinions are not explained by Dr. Steury, Dr. Potnis and Dr. Vanderharst's reports or consistent with the record as a whole. The claimant is able to perform a wide range of activities of daily living. Therefore the undersigned rejects these opinions.

(AR 34).

Plaintiff does not discuss the ALJ's decision rejecting Dr. Steury's June 2008 opinion, Dr. Potnis' March 2009 opinion or Dr. Vanderharst's June 2009 opinion. Plaintiff cannot identify which of these medical providers were treating physicians. Nevertheless, he relies on the so-called "treating physician rule," under which a treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *See generally, Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). In short, plaintiff has presented no basis for this court to evaluate the ALJ's alleged error in rejecting these opinions. A court need not make the lawyer's case by scouring the party's various submissions to piece together appropriate arguments. *Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995). "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). Accordingly, plaintiff's contention that the ALJ erred by rejecting these three opinions is deemed waived.

However, plaintiff has pointed out an inconsistency in the ALJ's review of Dr. Steury's opinions of February 2006 and May 2007. The ALJ relies on opinions issued by Dr. Steury in February 2006, Exhibit 9F (AR 289-92), which contain discrepancies in the chronology of plaintiff's treatment. Dr. Steury's opinion letter is dated February 13, 2006. However, the letter refers to incidents that occurred after that date. For example, Dr. Steury stated that plaintiff has been suffering the after effects from injuries sustained in an automobile accident on "08-22-05," which included chronic pain syndrome with both cervicalgia and lower back pain, and that he has been the primary caregiver for plaintiff "since 04-28-06" (AR 291). The doctor stated that plaintiff attempted to see him "in early September" (presumably 2005) and that he was seen by a PA (physicians assistant) in his office on "09-13-06" who gave plaintiff an "off work note" for that date (AR 291). Dr. Steury also saw plaintiff on "10-10-06," at which time it the doctor "took him completely off work due to his chronic somatic back pain and the medications being utilized to treat that," and that it was clear to the doctor "that it was no longer advisable or safe form[sic] him to continue his work" (AR 291). Dr. Steury issued a second letter on February 20, 2006, which contained a similar deficiencies (i.e., that he has been plaintiff's primary caregiver since 04-28-06) (AR 292). In this letter, the doctor stated that none of the modalities attempted to control his pain were "completely successful," that plaintiff was enrolled in the Pain Management Network at Gratiot Medical Center, and that he showed some signs of progress (AR 292). In addition, Dr. Steury stated:

> At this point in time, due to his chronic pain, Mr. Jones is incapacitated from work. The anticipated length of disability is twelve months.

(AR 292).

The ALJ also relied on Dr. Steury's May 2007 opinion as set forth in Exhibit 18F (AR 364). In a medical statement prepared for the State of Michigan on May 8, 2007, Dr. Steury

opined that plaintiff had been unable to work since September 13, 2006 (AR 364). The doctor listed plaintiff's disability as due to chronic cervical pain syndrome and chronic opiate use (AR 364).

Dr. Steury's opinions from February 2006 are confusing and internally inconsistent. In addition, the ALJ's adoption of Dr. Steury's opinion from May 2007 is inconsistent with the ALJ's ultimate determination that plaintiff had not been disabled at any time since September 9, 2006. For these reasons, the ALJ's decision, which adopts Dr. Steury's opinions of February 2006 and May 2007, is not supported by substantial evidence. Accordingly, this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the ALJ should re-evaluate these two opinions and explain which portions of the opinions he adopts.

> **B.     The ALJ did not have substantial evidence to support his finding that plaintiff could have performed light work.**

Plaintiff testified that he began using a cane in February of 2009 as prescribed by Dr. Potnis (AR 50). Plaintiff contends that he cannot perform light work because "[t]ypically, cane use eliminates a person's ability to perform light work because, according to virtually all vocational experts, light work environments typically do not allow cane usage on a shop floor for safety reasons." Plaintiff's Brief at p. 18. Here, plaintiff appeared at his hearing on with a cane (AR 50). When the ALJ inquired about the cane, plaintiff testified that Dr. Potnis prescribed it in February 2009, approximately five months before the hearing (AR 50). Plaintiff's recollection of the date was off by perhaps one month, with the record reflecting that Dr. Potnis prescribed the cane after examining plaintiff on March 13, 2009 (AR 680-81). At Item 6 of plaintiff's post-examination treatment plan, Dr. Potnis stated, "Cane for ambulation. He does favor his left leg. I recommended he try it on the right." (AR 681). In his decision, the ALJ noted that plaintiff "did not start [using] a cane until February 2009," and that Dr. Potnis "prescribed medication and a cane" in March 2009

(AR 31). Despite acknowledging that plaintiff had been prescribed a cane a few months before the administrative hearing, the ALJ did not include the use of a cane in plaintiff's RFC and provided no explanation for this omission.

Based on this record, the ALJ's RFC determination is not supported by substantial evidence with respect to plaintiff's use of a cane to ambulate. This is not a harmless error. The ALJ found that plaintiff could perform light work, which by definition requires lifting up to 20 pounds. Plaintiff's use of a cane could affect his ability to perform such work. *See, e.g., Love v. Commissioner of Social Security*, 605 F.Supp.2d 893, 907 (W.D. Mich. 2009) (court found that the ALJ's RFC determination was not supported by substantial evidence where the ALJ failed to address the illogical conclusion that a person can carry 20 pounds while using an assistive device; "[t]he Court does not doubt that Plaintiff can lift 20 pounds, but fails to comprehend how Plaintiff can carry 20 pounds if he requires a 'hand-held assistive device' to ambulate"). Accordingly, this matter should be reversed and remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should decide whether plaintiff needs to use a cane for ambulation, and if so, whether plaintiff can perform light work while using this assistive device.

### C. The ALJ committed reversible error by not following the testimony of the vocational expert to factually correct hypothetical questions.

Plaintiff also contends that the ALJ's decision is not supported by substantial evidence because the hypothetical question posed to the vocational expert (VE) "never discussed cane usage." Plaintiff's Brief at pp. 21-22. An ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). This

evidence may be produced through the testimony of a VE in response to a hypothetical question which accurately portrays the claimant's physical and mental limitations. *See Webb v. Commissioner of Social Security*, 368 F.3d 629, 632 (6th Cir. 2004); *Varley*, 820 F.2d at 779. However, a hypothetical question need only include those limitations which the ALJ accepts as credible. *See Blacha v. Secretary of Health and Human Services.*, 927 F.2d 228, 231 (6th Cir. 1990). *See also Stanley v. Secretary of Health and Human Services.*, 39 F.3d 115, 118 (6th Cir. 1994) ("the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals"). Because the purpose of the hypothetical question is to elicit testimony regarding a claimant's ability to perform other substantial gainful activity that exists in the national economy, the question does not need to include a listing of the claimant's medical diagnoses. "[A] hypothetical question need only reference all of a claimant's limitations, without reference to the claimant's medical conditions." *Webb*, 368 F.3d at 632.

The ALJ's hypothetical question posed to the VE did not include a restriction that plaintiff required a cane for ambulation (AR 33, 61-62). As previously discussed, the ALJ's determination that plaintiff did not need a cane to ambulate is not supported by substantial evidence. The ALJ's hypothetical question posed to the VE contained the same flaw. Accordingly, on remand, if the Commissioner determines that plaintiff's RFC is limited by the use of a cane, then he should obtain vocational evidence consistent with this additional limitation.

### D.     Sentence-six remand

Plaintiff has submitted new evidence and requests a remand to consider that evidence.[2] When a plaintiff submits evidence that has not been presented to the ALJ, the court may

---

[2] Section 405(g) authorizes two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing the decision of the Commissioner(a sentence-four remand); and

consider the evidence only for the limited purpose of deciding whether to issue a sentence-six remand under 42 U.S.C. § 405(g). *See Sizemore v. Secretary of Health and Human Servs.*, 865 F.2d 709, 711 (6th Cir.1988). Under sentence-six, "[t]he court . . . may at any time order the additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . ." 42 U.S.C. § 405(g). In a sentence-six remand, the court does not rule in any way on the correctness of the administrative decision, neither affirming, modifying, nor reversing the Commissioner's decision. *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991). "Rather, the court remands because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and that evidence might have changed the outcome of the prior proceeding." *Id.* "The party seeking a remand bears the burden of showing that these two requirements are met." *Hollon ex rel. Hollon v. Commissioner of Social Security*, 447 F.3d 477, 483 (6th Cir. 2006).

Here, the administrative record contains 280 documents that were not in evidence when the ALJ addressed plaintiff's claim (AR 706-986). It appears that these records (Exhibits 39F to 47F) were sent to the Appeals Council on or about April 1, 2010, approximately seven months after the ALJ issued the decision denying benefits (AR 706, 714, 734, 816, 827, 835, 895, 917, 926). Plaintiff refers to some of these records in his brief. For example, plaintiff contends that the ALJ should have adopted the opinions of unidentified treating physicians that he was disabled because, "[a]s an example, the most recent x-rays of Plaintiff's knee indicated that apparently there

---

(2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the Commissioner (sentence-six remand). *See Faucher v. Secretary of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994).

was so much bony overgrowth that the patellafemoral joint had literally been lost (709)." Plaintiff's Brief at 18.

While plaintiff has requested a sentence-six remand as relief, he has not shown that the requirements for a remand have been met. The only argument in support of a remand appears in plaintiff's reply brief, in which he contends that the September 26, 2009 Notice of Award demonstrates that the ALJ's decision was "dubious" and unsupported by the evidence. Plaintiff's Reply Brief (docket no. 17 at p. 3). Plaintiff has not established that this evidence is material or that good cause exists for failing to incorporate the new evidence into the administrative record. *See* 42 U.S.C. § 405(g). "[A] subsequent favorable decision itself, as opposed to the evidence supporting the subsequent decision, does not constitute new and material evidence under § 405(g)." *Allen v. Commissioner of Social Security*, 561 F.3d 646, 653 (6th Cir. 2009). Furthermore, plaintiff cannot use the subsequent award for benefits on September 26, 2009 as proof that he was disabled when the ALJ denied his application for benefits on September 25, 2009. *See Asbury v. Commissioner of Social Security*, 83 Fed. Appx. 682, 685 (6th Cir. 2003) (a claimant cannot "bootstrap her success" on a subsequent application for benefits to change the burden of proof in the present proceedings "so as to require the Commissioner to find disability for the earlier period unless the agency can demonstrate a change in [his] condition"). Accordingly, plaintiff's claim for a sentence-six remand and for relief based upon a subsequent favorable decision awarding benefits should be denied.

### IV. Recommendation

For the reasons discussed, I respectfully recommend that the Commissioner's decision be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405g. On remand, the Commissioner: should address Dr. Steury's opinions of February 2006 and May 2007; address plaintiff's need for a cane; and, obtain additional vocational evidence if warranted.


Dated: February 8, 2012                               /s/ Hugh W. Brenneman, Jr.
                                                     HUGH W. BRENNEMAN, JR.
                                                     United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).